IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DAWN M. BEST,

                        Plaintiff,                        OPINION & ORDER

    v.

                                                    13-cv-837-jdp

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                        Defendant.

---

      Plaintiff Dawn Best seeks judicial review of a final decision of the Acting Commissioner of Social Security finding her not disabled within the meaning of the Social Security Act. Plaintiff contends, principally, that remand is warranted because the Administrative Law Judge (ALJ) erred in determining her residual functional capacity (RFC). According to plaintiff, the ALJ failed to consider relevant medical evidence of plaintiff's mental and physical impairments. Plaintiff also asserts that the ALJ improperly evaluated her credibility. After reviewing the record in this case, the court concludes that remand is necessary because the ALJ overlooked medical evidence of plaintiff's mental limitations, and excluded these limitations from plaintiff's RFC without adequate reasoning.

BACKGROUND

      Unless otherwise noted, the court draws the following procedural and factual background from the ALJ's written opinion. Where appropriate, the court cites to the Administrative Record, Dkt. 10, to supply additional relevant information.

      Plaintiff suffered a work-related back and neck injury in 2002, but she was able to continue working as a laborer at or near full-time capacity through 2005. Over the next three years, plaintiff filed three applications for disability benefits because of her injury, but each

application was denied because the Social Security Administration determined that plaintiff's conditions did not prevent her from working. Plaintiff continued working as a cashier at a gas station through late 2009, but she has not worked since then.

Plaintiff has participated in regular medical treatment for her back and neck pain. MRIs and x-rays from 2009 showed degenerative changes in her spine. Although plaintiff underwent physical therapy, MRIs and examinations throughout the next two years continued to show degenerative disc disease. Plaintiff sought pain management treatment and continued to report to her doctors that she was having difficulty standing, walking, and performing other activities.

Plaintiff also suffers from mental impairments, and she underwent a consultive examination by a clinical psychologist in 2011. The psychologist concluded that plaintiff suffered from agoraphobia and a panic disorder. R. 422. According to the report generated after the examination, plaintiff was "not capable of working." *Id.* The record also contains several estimates of plaintiff's global assessment of functioning score, ranging from 30 to 50.

On January 7, 2011, plaintiff applied for disability insurance benefits and for supplemental security income. After a hearing, an ALJ issued a written opinion denying plaintiff's applications. The ALJ found that plaintiff suffers from the following severe impairments: degenerative disc disease, anxiety disorder, and dysthymic disorder (a mild, but long-term form of depression). R. 42. The ALJ noted that plaintiff was diagnosed with bilateral carpal tunnel syndrome, but observed that plaintiff had undergone successful treatment for the condition. The ALJ also commented that plaintiff did not report any significant limitations associated with her carpal tunnel syndrome during the hearing. Thus, the ALJ concluded that the condition was non-severe. *Id.*

In his written opinion, the ALJ evaluated the medical evidence and assigned plaintiff the RFC to perform light work with additional limitations. R. 44. Specifically, the ALJ concluded

that plaintiff requires the ability to use a cane for balance when walking, she must avoid hazardous heights and dangerous work, and she is available for only simple, routine, and repetitive work. The ALJ indicated that plaintiff can understand, remember, and carry out simple instructions; can respond appropriately to supervisors, coworkers, and the public; and is able to adjust to routine changes in the work setting. *Id.* Relying on a vocational expert's (VE) testimony that there would be jobs available to a person with these limitations, the ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act.

The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final determination of the Commissioner. On December 4, 2013, plaintiff filed a timely petition in this court for judicial review of the ALJ's decision, pursuant to 42 U.S.C. § 405(g).

## ANALYSIS

Plaintiff presents three reasons to remand this case for further proceedings. The first two relate to the ALJ's RFC determination. Plaintiff contends that the ALJ failed to consider relevant medical evidence of both her mental and her physical limitations in determining her RFC. Plaintiff's third reason for remand is that the ALJ improperly evaluated her credibility. Because the ALJ did not adequately explain the mental limitations he imposed, the court will remand this case to the Commissioner.

When a federal court reviews a final decision by the Commissioner of Social Security, the Commissioner's findings of fact are "conclusive" if they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot

3

reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

Even so, the court may not simply "rubber-stamp" the Commissioner's decision without a critical review of the evidence. *See Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992). Rather, "the court must conduct a critical review of the evidence before affirming the [C]ommissioner's decision, and the decision cannot stand if it lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Hemminger v. Astrue*, 590 F. Supp. 2d 1073, 1079 (W.D. Wis. 2008) (internal citations omitted). To provide the necessary support for a decision to deny benefits, the ALJ must "build an accurate and logical bridge from the evidence to [his] conclusion." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

### A. Plaintiff's mental impairments

Plaintiff contends that the ALJ "played doctor" in evaluating her mental health limitations, and ignored evidence in the record that supported greater impairments. Plaintiff observes that every examining or reviewing opinion in this case found that she suffers from at least moderate limitations in social functioning. The most severe limitations came from Ronald Johnson, PhD, who performed a consultive examination and opined on plaintiff's mental health. After summarizing his clinical findings, Dr. Johnson diagnosed plaintiff with a panic disorder and agoraphobia. R. 421. Dr. Johnson wrote that plaintiff "is quite impaired and almost certainly from the primary diagnosis of agoraphobia and panic disorder." R. 422. He was "quite sure that [plaintiff] is not malingering, as it appears that she was trying to put her best foot forward rather than her 'worst foot.'" *Id.* Finally, Dr. Johnson concluded that plaintiff "is not capable of working, at least with the current panic disorder." *Id.*

Two state agency reviewers also opined on plaintiff's mental health. But their limitations were less severe than Dr. Johnson's were. The first reviewer, Jack Spear, PhD, observed some

4

inconsistencies between plaintiff's social activities and her descriptions of her symptoms. R. 99. Dr. Spear indicated that plaintiff suffered from an anxiety disorder and concluded that she had moderate limitations in social functioning. R. 97. According to Dr. Spear, these limitations extended to plaintiff's ability to: (1) interact appropriately with the general public; (2) ask simple questions or request assistance; (3) accept instructions and respond appropriately to supervisors; and (4) get along with coworkers or peers without distracting them. R. 101-02. The second reviewer, Joan Kojis, PhD, affirmed Dr. Spear's assessment as written. R. 491.

The ALJ assigned "weight" to the reviewers' opinions and "little weight" to Dr. Johnson's opinion. R. 49. Despite the fact that all three opined that plaintiff would have at least moderate limitations in social functioning, the ALJ found plaintiff to have only mild limitations in this area. R. 43. The ALJ noted that: (1) plaintiff can generally get along with others when she is not in pain; (2) although plaintiff does not go out often, she socializes with others on the phone, on the computer, or in person; and (3) plaintiff has been able to attend medical appointments, shop, and move freely about the community. *Id.* The ALJ also wrote that none of plaintiff's treating physicians noted difficulty interacting with her during appointments, and that during the hearing, plaintiff did not report any symptoms associated with her anxiety disorder. *Id.*

At the outset, the ALJ's conclusion is suspect because it contradicts every opinion of plaintiff's mental health that is in the record, including the two that the ALJ purported to credit. An ALJ cannot merely substitute his own medical judgment for that of an examining source or a reviewing source. *See Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009) ("The ALJ impermissibly 'played doctor' and reached his own independent medical conclusion."); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("[A]dministrative law judges . . . must be careful not to succumb to the temptation to play doctor."). In addition to the fact that no medical opinion supports the ALJ's conclusion regarding plaintiff's social functioning, the reasons that

5

he gave for finding only mild limitations are insufficient and, in some cases, incorrect. For example, although plaintiff socializes with others on the phone or in person, the ALJ did not explain how interacting with friends or acquaintances demonstrates an ability to interact appropriately with the public or with supervisors. *See Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("[Plaintiff's] ability to struggle through the activities of daily living does not mean that she can manage the requirements of a modern workplace."). And contrary to the ALJ's findings, the record does, in fact, contain treatment notes recounting plaintiff's inappropriate behavior toward her health care providers. R. 563, 569. Thus, the ALJ failed to support his conclusions regarding plaintiff's social functioning with substantial evidence.

The Commissioner responds that the RFC is appropriate because the ALJ "translated" Dr. Spear's (and Dr. Kojis's) limitations on plaintiff's social functioning into a specific work-related limitation. Dkt. 20, at 12. According to the Commissioner, the ALJ's decision to deny benefits is sound because he included this translated limitation in a hypothetical question to the VE and in the RFC. The Commissioner's argument is unpersuasive because the ALJ did not *translate* Dr. Spear's moderate limitations in social functioning; he *rejected* them. The ALJ explicitly found that plaintiff "experiences a mild limitation upon her ability to maintain adequate social functioning." R. 43. Further, the RFC indicates that plaintiff "is able to respond appropriately to supervisors, coworkers, and the public," R. 44, and the ALJ used this language in hypothetical questions to the VE. R. 87-88. But these are the very areas in which Dr. Spear found that plaintiff was moderately limited. R. 101-02.

Although the ALJ improperly concluded that plaintiff suffered from mild, as opposed to moderate, limitations in social functioning, the court must still determine whether the error was harmless. Remand is not warranted if the court "can predict with great confidence that the result on remand would be the same." *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The

Commissioner implicitly argues that any error in the RFC is harmless because the two jobs that the ALJ cited as precluding a finding of disability in this case can be performed by a person with even moderate limitations in social functioning. Plaintiff disagrees, and so does the court.

The VE testified that a person with plaintiff's RFC could perform work as a mail clerk or as a counter clerk. R. 51. The Commissioner attached the Dictionary of Occupational Titles's definitions for both of these positions to her brief, and observes that neither involves significant interaction with others. Dkt. 20, at 13 n.3 (citing Dkt. 20-1). Yet, portions of these definitions suggest that both jobs involve interacting with the public or with co-workers. For example, the narrative job description states that a mail clerk "[m]ay distribute and collect mail," and performs "Clerical Services, except Bookkeeping (stenographic, secretarial, typing, filing, duplicating, etc.)." Dkt. 20-1, at 1-2. Likewise, the narrative description for a counter clerk describes the job as answering customer questions or taking orders, and identifies "People: 6 – Speaking-Signaling" as "Significant." Dkt. 20-2, at 2. Plaintiff also correctly observes that these jobs generally require interacting with the public. Dkt. 12, at 24.[1]

The court cannot conclude "with great confidence" that the VE would have cited these jobs as available work if the ALJ posed hypothetical questions that properly included plaintiff's moderate limitations in social functioning. This is not a case where the jobs that the VE cited required less than the omitted limitations. *Cf. Milliken v. Astrue*, 397 F. App'x 218, 222 (7th Cir.

---

[1] Plaintiff contends that her use of a cane would preclude her from performing either of these jobs. Dkt. 12, at 22-24. But the ALJ specifically asked the VE to identify jobs available to a person who needs to use a cane for balance while walking, and the VE testified that jobs as a mail clerk and counter clerk would be available. R. 86. The ALJ reasonably relied on the VE's knowledge and expertise, and plaintiff's representative did not identify any inconsistency between plaintiff's RFC and the VE's cited jobs. This issue therefore does not independently require remand. *See Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) ("When no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion, even if that conclusion differs from the *Dictionary*'s.").

7

2010) ("Although Dr. Cools opined that Milliken could have limited, casual contact with the general public, the jobs the VE identified required even less than that: no contact with the general public."). It is certainly possible that if the ALJ proposed limitations on plaintiff's ability to interact with the public, co-workers, and supervisors, the VE would have offered a different opinion. *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 621 (7th Cir. 2010) ("[E]ven a moderate limitation on responding appropriately to supervisors may undermine seriously a claimant's ability to work."). Thus, the ALJ's error in this case was not harmless, and remand is necessary. On remand, the ALJ does not have to find that plaintiff suffers from moderate limitations in social functioning, but he must adequately explain the limitations that he finds appropriate, and he must support that explanation with record evidence. The ALJ must then present these limitations to a VE to determine what jobs are available to plaintiff.

**B. Plaintiff's physical limitations**

Plaintiff also contends that the ALJ ignored evidence in the record that supported greater limitations on her physical abilities. She directs the court to MRIs of her back that show degenerative changes in her spine and to treatment notes of her visits to a pain management clinic. *See* R. 293, 440-41, 549-52. Plaintiff observes that the state agency reviewers' opinions predate some evidence in the record of her ongoing pain and medical issues, and she contends that under SSR 96-6p, a reviewer's opinion can receive less weight if it is inconsistent with record evidence that was not available at the time of the review. Plaintiff also contends that the ALJ impermissibly relied on her generally conservative treatment history as evidence that her physical conditions were not severe enough to warrant a more restrictive RFC. According to plaintiff, these deficiencies require remand. The court disagrees.

The ALJ found plaintiff to be capable of performing light work with the additional limitations that she avoid hazardous heights and dangerous machinery, and that she use a cane

for balance when walking. R. 44. Plaintiff does not identify a medical opinion that supports greater limitations than those found by the ALJ. Thus, the ALJ properly relied on the only opinions available: those of state agency examiners Janis Byrd, MD, and Syd Foster, DO.

Dr. Byrd opined that plaintiff's most recent exam showed only age-appropriate arthritis in her arms and no obvious nerve deficit, but that plaintiff had tenderness in her back and limited range of motion. R. 97. Dr. Byrd concluded that plaintiff: (1) could lift 20 pounds occasionally; (2) could lift 10 pounds frequently; (3) could stand, walk, and sit for a total of six hours in an eight-hour day; and (4) was capable of light work. R. 100, 103. Dr. Foster affirmed Dr. Byrd's conclusions as written, R. 492, and the ALJ afforded these opinions "great weight." R. 48. He noted that the reviewers had "special expertise in assessing impairments and limitations within the regulations of the Social Security Administration," and that their opinions were consistent with the medical evidence of plaintiff's normal range of motion and the absence of any other "significant objective findings." *Id.* The ALJ also indicated that plaintiff's reports of being able to work as a cashier prior to and after her alleged onset date supported the reviewers' evaluations of her physical abilities. *Id.* Although the ALJ saw no medical evidence to support plaintiff's need for a cane, he nevertheless accounted for this limitation in plaintiff's RFC. *Id.*

The first problem with plaintiff's argument is that she has contradicted the position she took with regard to her mental impairments. Plaintiff argued that remand was necessary because the ALJ found only mild limitations in social functioning even though every medical opinion in the record supported moderate limitations. She asserted that the ALJ impermissibly "played doctor" by substituting his own conclusions for those of the medical experts. But now, plaintiff protests that the ALJ should have imposed physical limitations in her RFC based on the ALJ's own review of the medical evidence, brushing aside the only expert opinions of her physical impairments. Plaintiff's argument is unpersuasive for the same reasons that will lead the court to

9

remand this case for reconsideration of her mental limitations: an ALJ cannot "play doctor" and ignore the medical opinions in the record.

More to the point, the ALJ adequately summarized the entire medical record, even if he did not specifically mention each piece of evidence. "[A]n ALJ need not discuss every piece of evidence in the record, [but] the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). Here, the ALJ did not ignore an entire line of evidence. In fact, he discussed some of the evidence that plaintiff asserts he overlooked. *See* R. 46 (summarizing an April 2011 MRI, follow-up appointments between May 2011 and June 2012, and plaintiff's pain relief after injections in 2011). Even if the remaining evidence is not specifically identified in the ALJ's opinion, most of it merely consists of plaintiff's subjective reports to her doctors. The ALJ acknowledged that plaintiff has repeatedly complained about her pain, but wrote that "treatment notes reflect that physical examinations remained generally unremarkable and were generally inconsistent with the claimant's reports of significant physical limitations." *Id.* Tellingly, plaintiff does not identify any omitted medical opinions of her physical limitations, and the ALJ correctly noted that "no treating source has attested to any mental or physical work related limitations associated with the claimant's impairments, nor has any treating source alleged that the claimant is unable to work." R. 49.

Finally, the ALJ properly relied on plaintiff's conservative treatment as one reason— among others—to doubt the severity of her physical impairments. The ALJ also noted that plaintiff failed to comply with the directions of her health care providers on at least one occasion. R. 47. Plaintiff does not contend that the ALJ incorrectly summarized her treatment as "conservative;" rather, she asserts that she gradually pursued more aggressive solutions for her pain. *See Schomas*, 732 F.3d at 709 ("[The claimant] indeed *began* with conservative therapy, such as over-the-counter anti-inflammatories, chiropractic treatment, and physical therapy. But

over time his treatment became more aggressive. . . . Those treatments belie the ALJ's conclusion that [the claimant] was treated conservatively.") (original emphasis). But in this case, plaintiff does not identify any specific "aggressive" treatment for her back and neck pain.[2] Under 20 C.F.R. § 404.1529(c), a claimant's treatment history is one of many factors that an ALJ can consider when evaluating the nature and severity of the alleged impairments, and conservative treatment can undermine a claimant's complaints of disabling pain. *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009). The ALJ's decision confirms that he viewed plaintiff's conservative treatment as just one of many reasons to give weight to the state agency reviewers' opinions of her physical limitations.

The ALJ was not required to dismiss the only medical opinions of plaintiff's physical limitations that were in the record simply because there was some medical evidence—most of it subjective—to support greater restrictions. On remand, the ALJ could strengthen his RFC finding by discussing the evidence that plaintiff has identified, and he may even seek an updated medical opinion that accounts for this evidence. But the ALJ adequately explained his reasons for concluding that plaintiff can perform light work with additional restrictions, and that conclusion is supported by substantial evidence.

## C. Plaintiff's credibility

Plaintiff's remaining argument is that the ALJ erred in finding her less than credible. Having already found legitimate grounds for remand, the court need not address this issue in great detail. *See Scott v. Astrue*, 647 F.3d 734, 741 (7th Cir. 2011) ("These flaws are enough to require us to remand [and w]e therefore needn't decide whether the reasons the ALJ gave in support of her adverse credibility finding . . . were so 'patently wrong' as to separately require

---

[2] In 2010, plaintiff underwent two hand surgeries for her carpal tunnel syndrome. R. 308-09, 320-21. Later records indicate that her hand pain and numbness were resolved afterward. R. 45.

remand.") (internal citations omitted). Because proper evaluation of plaintiff's mental limitations will require a new credibility assessment, however, the court will offer some guidance.

In reviewing an ALJ's decision, the court ordinarily affords credibility determinations considerable deference and upholds them if the ALJ gives "specific reasons for the finding that are supported by substantial evidence." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). The court will reverse a "determination only if it is so lacking in explanation or support that [it is] 'patently wrong.'" *Simila*, 573 F.3d at 517 (internal citations omitted). In this case, the ALJ found plaintiff to be less than credible because her conservative treatment history and daily activities did not align with her complaints of allegedly disabling pain. R. 47. Neither of these reasons is fully persuasive.

First, as the court has already discussed, plaintiff pursued relatively conservative treatment. This may be a reason for the ALJ to doubt the veracity of her subjective complaints of pain, but not until he first explores in greater detail the reasons for such conservative treatment. *See Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("[T]he ALJ must not draw any inferences about a claimant's condition . . . unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (internal quotation marks omitted). For example, there is evidence in the record that plaintiff intentionally sought certain treatments because her insurance would not pay for more aggressive measures. R. 76, 397-98, 541. More aggressive treatment may have risks and side effects that make those options unreasonable. Without exploring the reasons behind plaintiff's pursuit of only conservative treatment, the ALJ should not have uses it as a reason to broadly discredit her. *See Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014).

Next, the ALJ's reliance on plaintiff's daily activities was misplaced. The ALJ acknowledged that plaintiff consistently reported to her doctors that she was unable to dress herself, comb her hair, or brush her teeth, R. 47, and plaintiff correctly observes that none of her doctors opined that she was malingering. These considerations might actually warrant giving her subjective complaints *more* weight. Yet, in discussing plaintiff's daily activities, the ALJ instead emphasized that there was no objective medical evidence to support plaintiff's complaints. *Id.* Under SSR 96-7p, a claimant's subjective reports of her symptoms cannot be ignored simply because they are not substantiated by objective medical evidence. *See Pierce*, 739 F.3d at 1049-50. This is what the ALJ appears to have done in this case. On remand, the ALJ must identify evidence that affirmatively contradicts plaintiff's subjective complaints, rather than rely on the absence of supporting medical evidence.

ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying plaintiff Dawn Best's application for disability benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered March 31, 2015.

BY THE COURT:

_/s/_____
JAMES D. PETERSON
District Judge